## EUGENE BUCK v. THE STATE.

No. 3049. Decided November 23, 1904.

**1.—Theft—Evidence—Conversation—Irrelevant Part Inadmissible.**

Where the State had adduced some portion of a conversation detailed between defendant and a State's witness which was competent, that would afford no reason for the introduction by the State, of another part of such conversation which was irrelevant and immaterial.

**2.—Same—System Must be Made Manifest.**

How the fact that defendant told the State's witness that one P. had told the defendant about P.'s theft of another horse, and not the one for the theft of which defendant was being tried, would tend to show systematic horse theft, must be made manifest in the bill of exceptions.

**3.—Same—Other Crimes—Bill of Exceptions Must Show Irrelevancy.**

Where the State was permitted to show over the objection of defendant that he had stolen two other horses, about one month prior to the theft charged in the case for which he was being tried, which testimony the State introduced to show system of theft, the defendant's bill of exceptions should affirmatively show that said other thefts did not constitute any part of the system and had no bearing on the particular theft charged against him.

**4.—Same—Attack on State's Witness—Materiality of Testimony.**

Before appellant could avail himself of the refusal of the court to permit him to attack a State's witness, as being of unsound mind, the bill of exceptions should have shown that said witness was a material witness for the State, or should have shown some fact or facts testified to by him, which were of a material character in the case.

**5.—Accomplice—Corroboration Insufficient.**

See opinion for evidence which is held to be insufficient in corroborating the testimony of an accomplice, so as to connect appellant with the offense charged against him.

Appeal from the District Court of Bee. Tried below before Hon. J. C. Wilson.

Appeal from a conviction of horse theft; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*F. G. Chambliss,* for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of theft, and his punishment assessed at confinement in the penitentiary for a term of three years; hence this appeal.

On the trial appellant objected to testimony of witness Homer Powell, to the effect that defendant told him that Wiley Parker had, at a previous date, stated to defendant, that he (Parker) had stolen the horse of one Potter and sold him about one month prior to the theft of the horse charged in this case. Appellant objected because said evidence was irrelevant and immaterial, and would only tend to prejudice appellant. The State insisted on said evidence, in order to prove systematic horse theft between defendant and said Wiley Parker. The court explains said bill by stating, that the evidence complained of was a part of a conversation detailed between appellant and witness Parker, part of which conversation had gone in evidence without objection. If the State had adduced some portion of the conversation detailed between appellant and the State's witness Powell, which was competent, that would afford no reason for the introduction by the State of another part of said conversation which was irrelevant and immaterial. The bill shows that the evidence was insisted on by the State, in order to prove systematic horse theft between defendant and said Wiley Parker. How the fact that appellant told the State's witness Powell that Parker had told him about stealing the horse of Potter, would tend to show systematic horse theft, and as having a bearing upon the particular offense charged against appellant, is not made manifest in the bill. Indeed, the court does not appear to base his ruling upon this idea, but rather that the evidence was admissible as a part of a conversation between Buck and the witness Powell, which had already gone in evidence without objection.

The next bill shows that the State proved by Wiley Parker, who was a State's witness, the theft of a horse from one Potter, and another from one Poland by defendant and said witness Parker, under and by an agreement between defendant and said witness theretofore made to steal horses in and around Beeville, Texas. The thefts of said Potter's and Poland's horses having occurred about one month prior to the theft charged in this case. Appellant objected because said testimony was irrelevant and immaterial, and would only tend to prejudice defendant before the jury. Counsel for the State insisted that said evidence was offered to prove systematic horsetheft between defendant and said witness Wiley Parker. Defendant's objections were overruled, and the evidence admitted. As a general proposition, in the absence of some showing to the contrary, other extraneous crimes are not admissible against a defendant. This bill appears to recognize the fact that said theft of Potter's and Poland's horses were extraneous crimes. But it was insisted the testimony was admissible, because said other thefts would tend to show system, and have a bearing to the theft charged against defendant. It may be under the rulings of this court, it was incumbent on the complaining appellant, to affirmatively show in said bill that said other thefts did not constitute any part of the system, so as to have any bearing on the particular theft charged against appellant; that is, appellant is held to make his bill so complete as to show that the testimony was not admissible under any circumstances, so as to make manifest the error of the court in its admission. With this view of the bill we cannot determine that the court erred in admitting said testimony.

By the third bill of exceptions he questions the action of the court in refusing to permit Mrs. Eliza McMurray to testify that Pat Gallagher had been previously convicted of lunacy, had been confined in the lunatic asylum, and was still weak-minded and had a treacherous memory, poor recollection of past events, and is now of unsound mind. The State objected to this testimony, on the ground that the jury was the judge of the witness and his ability to testify. The court explains the bill by stating that the witness Gallagher testified, without objection of defendant, that he had been sent to the lunatic asylum at one time, and was afterwards discharged as cured; that the witness Mrs. McMurray was offered to prove that said Gallagher was of unsound mind, had a bad memory, to which the State objected; and the court sustained the objection. In our opinion, before appellant could avail himself of the refusal of the court to permit him to attack the State's witness Pat Gallagher, as being of unsound mind, the bill should have shown that said Gallagher was a material witness for the State, or should have shown some fact or facts testified to by him, which were of a material character in the case. The bill does not show this. Of course, if it had the testimony was admissible and should have been permitted by the court. As stated above, the bill does not disclose the character of Pat Gallagher's testimony against appellant.

It is insisted by appellant that this case depends altogether upon the

testimony of Wiley Parker, a confessed accomplice; that there is no testimony corroborating said Parker and tending to connect appellant with the commission of the offense. We believe this contention is well taken. This is a peculiar case. It appears from the State's own testimony that appellant was solely instrumental in developing and making known to the owner the person who had committed the theft of his horse. Of course, Homer Powell (prosecutor) was aware that some one had committed the theft of his horse, as it was missed; but he is not shown to have had any knowledge as to who this party was. He says: "The way I came to learn of the whereabouts of my mare was this: About six weeks after the theft I was working on a telephone line very late one evening, here in Beeville, when defendant, Eugene Buck, came to where I was and engaged me in conversation. He stated to me that he had something to tell me, but he wanted to swear me to secrecy as to who told me; and I told him all right. When defendant then told me, that Wiley Parker had told him, in conversation with him about three weeks before that he had taken old man's and Homer Powell's mares off and sold them, and had sold them near Victoria. And defendant further stated that Wiley Parker stated to him in said conversation, that he (Parker) had taken Mr. Potter's mare off also, about one month before he took our horses; and sold her to one N. R. Powell, near Charco, in Goliad County. I at once communicated these facts, as to where ours and his horses were, to Mr. Potter. The information obtained from defendant led to the recovery of mine and my father's mares. * * * Defendant stated to me in said conversation that I had better see my father and communicate the facts to him, which he had made known to me; and stated his reason for such advice was, that Wiley Parker was and is the chief witness for the defense in a case which I now have pending in Goliad, in which I am charged with murder, and had pending at the date of said conversation. Defendant told me to confer with my father as to what I wished to do in the matter, and whatever conclusion we reached, was all right, and to proceed as we thought best. On the following day, I wished to be released from the secrecy, as to my informant, as to where the horses had gone; and the defendant assented to same, and said I might tell the whole thing, if I wished to. Defendant stated in his first conversation with me that it had been about three weeks since Wiley Parker had told him about getting away with our horses and the horse of old man Potter." It does not appear that prosecutor had any idea as to who had taken his horse prior to this disclosure by appellant to him. It further appears Wiley Parker was introduced by the State and testified substantially that he and appellant were formerly partners, but the partnership had been dissolved some two or three months before the alleged theft; that appellant lived in Beeville and he lived some two miles from said town; that appellant was engaged in carrying the mail from Beeville to Denero, some twenty miles distant. That sometime in April, defendant came to him and asked him if he was ready to go into the horse stealing business, which they had

talked about when they were partners. He told him yes. Defendant then agreed to do the stealing, and he (Parker) would take the horses out of the country and sell them; that about the middle of April, appellant in pursuance of the agreement, got Potter's mare and Poland's horse; and he took them and carried them into Goliad County and sold them. That he came back and divided the money with appellant. That sometime afterwards, in May, appellant got the horse in question and another horse and hitched them behind his lot; and that he came there on the same night (May 22, 1904) and carried the horses off and sold them in Victoria County; that on that occasion he left his horse and buggy at appellant's house until he came back. There is also some testimony tending to show that Parker may have borrowed the saddle of appellant and rode it off with the horses. But this testimony is by no means clear. It is shown that he sold the two horses in Victoria, but nothing is said about the saddle; and it is not shown how that saddle was brought back to appellant's house, if it was ever carried back. But it was evidently at appellant's house after the alleged theft. Witness Parker states that when he returned he got his horse and buggy at appellant's house, and divided the money he got for the horses with the appellant. This witness on cross-examination further states, that he knew of no one, besides himself, who had ever seen appellant in possession of said horses or doing any act in connection therewith; and that he knew of no one but himself that knew appellant had received any of the money for said horses. It may also be stated here that after appellant disclosed to the owner the fact that Parker had gotten his horses, and where they might be found, that when said horse were found and the party in possession was confronted with Parker he identified him as the man who had sold the horses to him. Unquestionably the testimony of the witness Parker makes out a case against appellant. But our law has provided that, no person can be convicted on the uncorroborated testimony of an accomplice; and aside from his testimony there must be some testimony tending to connect appellant with the theft of the horses. There is testimony in the record showing that appellant and said Parker were on intimate terms; that they had been partners in boring wells previous to the alleged theft. There is also evidence that Parker visited appellant's house after he moved to the country,—at least as many as on two or three occasions. It is shown by defendant's own witnesses that Parker came to the house on Sunday night, May 22nd, the date of the alleged theft of said horses. This same witness, however, shows that appellant had no opportunity to commit theft of the horses on that night, prior to Parker going to the house or afterwards. It is also shown by other witnesses than the accomplice that he left his horse and buggy at appellant's house on that night. They remained there for about a week, until Parker returned from his trip to Victoria, where he is shown to have disposed of the horse. As stated before, there is no testimony, aside from that of the accomplice Parker showing that he borrowed or used appellant's saddle on that occasion in carrying the horses to Victoria,

Now the question arises, do these facts in any pertinent degree tend to connect appellant with the theft of said horses further than his mere knowledge that Parker committed the theft of the horses, which appellant concedes in his statement subsequently made to the owner; that is, as we understand the record, aside from the testimony of Parker, the accomplice, we have in addition, the intimacy existing between appellant and Parker, the fact that he visited appellant at his house on several occasions during April and May and the fact that he left his horse and buggy at appellant's during the time when he is shown to have carried the horses from Beeville to Victoria and there sold them. Even if it be conceded that the record shows, aside from the testimony of Parker that appellant loaned him his saddle on that occasion, still we do not believe the facts would be sufficient to show such a corroboration of the accomplice as would tend to connect appellant with the commission of the theft of said horses. So far we have viewed the facts alone from the State's standpoint. But, when we survey them as explained from the defendant's standpoint, the testimony serves in our minds to even eliminate any suspicion of theft on the part of appellant. The record discloses every opportunity on the part of Parker to have committed the theft of the horses without the assistance of any one. Furthermore, appellant without any motive actuating him as against Parker, made known to the owner, under peculiar circumstances, his knowledge that Parker had committed the theft of his horses; and while he requested the owner not to disclose his name at the time, yet on the next day, upon the request of the alleged owner, he gave him permission to use his name. Furthermore he is shown to have suggested that the owner advise with his father about the matter before acting, because Parker was a material witness for him in a murder case. All this conduct, it seems to us, is consistent with his innocence; and certainly the circumstances above indicated, when viewed through the light of this record, utterly fails to corroborate the accomplice in such measure as to connect him with the theft of said horse. Because, in our opinion, the testimony of the accomplice is not corroborated by other testimony connecting appellant with the offence charged, the judgment is reversed and the cause remanded.

*Reversed and remanded.*